In the Matter of the WELFARE of S. R. J., Respondent,

v.

STATE of Minnesota, Appellant.

No. 50597.

Supreme Court of Minnesota.

May 9, 1980.

Rehearing Denied June 10, 1980.

Warren Spannaus, Atty. Gen., St. Paul, Thomas Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for appellant.

Robert M. McClay, Murrin Metropolitan Legal Clinic, St. Paul, for respondent.

David W. Larson, Minnesota County Atty's Assn., Minneapolis, for amicus curiae.

Heard before KELLY, TODD, and WAHL, JJ., and considered and decided by the court en banc.

TODD, Justice.

Petitions for delinquency, based on a series of felonies, were filed against S. R. J.

Following a hearing, probable cause was determined to exist. Prior to a reference hearing, a psychiatrist was appointed to examine the minor at his request. The state unsuccessfully sought to obtain an adverse psychiatric examination. At the reference hearing, the juvenile court dismissed the petition of the state to have the minor certified for trial as an adult. We affirm as to the finding that S. R. J. was amenable for treatment, but we reverse the case for further proceedings as to whether the public safety is not served under the provisions of law relating to juvenile courts.

S. R. J. is charged with the commission of nine offenses consisting of one count of kidnapping in violation of Minn.Stat. § 609.-25 (1978); three counts of aggravated robbery in violation of Minn.Stat. §§ 609.245 and 609.05 (1978); one count of criminal sexual conduct in the first degree in violation of Minn.Stat. §§ 609.342(c) and 609.05 (1978); two counts of criminal sexual conduct in the second degree in violation of Minn.Stat. § 609.343 (1978); one count of criminal sexual conduct in the fourth degree in violation of Minn.Stat. § 609.345 (1978); and attempted robbery in violation of Minn.Stat. §§ 609.17 and 609.24 (1978). These offenses were allegedly committed on November 9, 1978, and November 16, 1978.

At the time of these offenses, S. R. J. was 16 years of age. He previously had been adjudicated delinquent and was on probation for auto tampering.

Following a hearing which determined that probable cause existed, the minor moved the court for the appointment of Dr. John Duffy to conduct a psychological and psychiatric evaluation of S. R. J. pursuant to Minn.Stat. § 260.151. The court granted the motion following a hearing on December 15, 1978. At the close of the hearing, the following dialogue occurred:

MISS ELLEDGE: One other matter, Your Honor, I would just ask the Court if Mr. McClay is going to intend to call Dr. Duffy as a witness at the reference hearing, that we be provided with copies of any reports in time to prepare for cross-examination of Dr. Duffy.

MR. MCCLAY: I have no objection.

THE COURT: Let me put it this way, if there is going to be a written report filed by Dr. Duffy I want a copy provided to the County Attorney's Office and I think it should be done at least a week before the hearing.

MR. MCCLAY: Only if Dr. Duffy is going to testify.

THE COURT: I assume that is what we are talking about.

MR. MCCLAY: If he is not I would not be required under those circumstances to provide them with a report?

THE COURT: If he is going to testify you are.

On February 26, 1979, the state moved the juvenile court for an order to have S. R. J. examined by a court-appointed psychiatrist or psychologist on the grounds that S. R. J. had put his mental condition in issue. The juvenile court denied the motion based on Ramsey County Juvenile Court rules and the Rules of Criminal Procedure. The state sought mandamus relief in this court to compel the issuance of such an order. We denied the request for a writ of mandamus. The state renewed its request for a separate evaluation of S. R. J. on April 25, 1979. This motion was denied. On April 26, 1979, a reference hearing was held. The state presented evidence from S. R. J.'s probation officer, Michael Murphy. An examination of the evidence discloses that Murphy clearly was of the opinion that S. R. J. was amenable to treatment. When asked if S. R. J. would be a threat to public safety, Murphy responded that no one would know how he would react to treatment since S. R. J. had never been involved in treatment before. He further testified that S. R. J. would possibly be a danger to the community. The state also called the dean of students from the high school S. R. J. had been attending. His testimony disclosed serious attendance problems and some disruptive problems caused by S. R. J.'s failure to attend classes while in school. However, the dean of students testified that S. R. J. did not at any time engage in what he considered to be violent behavior.

The state also offered in evidence the delinquency petitions and the police reports evidencing the alleged offenses and their underlying circumstances. The court received the exhibits for purposes of the reference hearing over the objection of counsel for S. R. J., who claimed they constituted hearsay and denied S. R. J. his right of confrontation. The report of Dr. Duffy was not made a part of the court's proceedings nor was Dr. Duffy called as a witness. The state was furnished a copy of the report, but there is nothing in the record to indicate that the juvenile judge ever saw the report. The state rested, and the court granted defendant's motion for a directed verdict on the ground that the state had failed to satisfy its burden of proof on the issues of amenability to treatment and threat to public safety as required by Minn. Stat. § 260.125, subd. 2(d).

█ In discussing the issue of amenability to treatment, the court referred to the testimony of Murphy, the probation officer. We agree with the trial court that the state failed to establish that S. R. J. was not amenable to treatment.

In discussing the issue of threat to public safety, the court referred to the testimony of Murphy apparently to support its determination of this issue. The juvenile judge discussed these reports as they related to probable cause but not as they related to evidence of the circumstances surrounding the commission of the alleged felonies. The state has appealed from the order of the juvenile court dismissing its petition to have S. R. J. certified for trial as an adult.

The issues which relate to the threat to public safety issue are:

(1) For what purpose are police reports admissible at juvenile reference hearings?

(2) How shall mental evaluation testimony be secured and what use shall be made of it at a juvenile reference hearing?

(3) Did the trial court err in refusing to recuse himself from the proceedings?

█ 1. Having determined that the juvenile court was correct in finding that the state failed to carry its burden of proof in establishing that S. R. J. was not amenable to treatment, we confine our discussion of the evidence and procedures herein as they relate to the issue of threat to public safety. A finding that the state had satisfied its burden on the public safety issue would be grounds to certify S. R. J. for trial as an adult since the statutory test is stated in the disjunctive. *State v. Hogan*, 297 Minn. 430, 212 N.W.2d 664 (1973). In *Hogan*, we stated:

> In determining if the public safety would be threatened, among the relevant factors to be considered are: (1) The seriousness of the offense in terms of community protection; (2) the circumstances surrounding the offense; (3) whether the offense was committed in an aggressive, violent, premeditated, or willful manner; (4) whether the offense was directed against persons or property; (5) the reasonably foreseeable consequences of the act; and (6) the absence of adequate protective and security facilities available to the juvenile treatment system.

297 Minn. at 438, 212 N.W.2d at 669.

█ These tests are among the relevant factors to be considered. *Matter of Welfare of Dahl*, 278 N.W.2d 316, 321 (Minn.1979). For the purposes of a reference hearing, the charges are assumed to be true. This assumption and the evidence relating to the circumstances and emotional characteristics of the accused juvenile cannot be used as, or be the source of, evidence relating to the guilt of the accused in a subsequent adjudicatory hearing. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966). A reference hearing is a dispositional hearing and the strict rules of evidence are not applicable. The appropriate test is whether the evidence is relevant and material. *In the Matter of the Welfare of T. D. S.*, 289 N.W.2d 137 (Minn.1980). The *T. D. S.* appeal arose from the Hennepin County Juvenile Court. The fact that the Hennepin County and Ramsey County Juvenile Courts operate under different rules does not alter the basic premise, namely, that in all juvenile courts in this state, reference hearings are dispositional hear-

ings not governed by the strict rules of evidence. Likewise, we find no need to attach constitutional restrictions on these proceedings other than basic due process rights.

Considered in this context, the police reports are admissible at a reference hearing. The juvenile judge should examine the reports as they relate to the factors set forth in *State v. Hogan*, 297 Minn. 430, 212 N.W.2d 664 (1973). The record in this case discloses that the juvenile judge only considered the police reports as they related to the issue of probable cause. That issue is not involved in a reference hearing. This matter will be remanded with instructions that the juvenile judge examine and consider the police reports as they relate to some of the factors enumerated in *Hogan* in making a determination as to whether S. R. J. is a threat to public safety.

2. Minn.Stat. § 260.151, subd. 1 (1978), provides in part:

The court may order any minor coming within its jurisdiction to be examined by a duly qualified physician, psychiatrist, or psychologist appointed by the court.

Minn.Stat. § 260.151, subd. 2 (1978), precludes the ordering of such an examination until after a probable cause determination has been made. This had occurred, and the court, in its discretion, had the power to order the examination. However, we are not satisfied with the manner in which this case proceeded or the limitations the court placed on itself and the state in ordering the examination of S. R. J. We hold that the statutory procedures provided for in Minn.Stat. § 260.151, subd. 1, as they relate to the evaluation of the accused minor are designed to assist the juvenile judge in making his discretionary judgment on matters relating to the juvenile. Thus, if psychiatric or psychological evaluations are to be made, the report should go to the court with copies made available to the state and the minor or his counsel. At the time of appointment, either the state or the minor may suggest names of doctors to the judge. However, the doctor so appointed shall be regarded as a court witness. The court or either party may call and cross-examine the doctor regarding the basis for any conclusions and recommendations made to the court. The juvenile court may, in its discretion, order additional examinations. Such designated persons shall be court witnesses, subject to the same right of cross-examination outlined above. We perceive no constitutional impairment in such a procedure. Any matters disclosed by the juvenile to the doctor in the course of the examination may not be evidence or the source of evidence in any subsequent adjudicatory procedure against the accused. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966). The report should be examined and considered by the juvenile judge along with other evidence in reaching a determination as to whether or not the juvenile is a threat to public safety. Likewise, in an appropriate case, the report could be of assistance to the juvenile judge in making a determination as to whether or not the juvenile is amenable to treatment.

The record in this case indicates the juvenile judge did not review the psychiatric report. We are remanding the matter for further proceedings in accordance with the procedures enunciated above.

3. An issue has been raised as to whether or not the juvenile judge should have recused himself from these proceedings. Since we are remanding the matter, we need not reach this issue. The state objects to the juvenile judge who originally heard this matter and has the right to request that it be assigned to a different judge on remand.

The order of dismissal is vacated and the matter is remanded for further proceedings consistent with this opinion.